IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Bernard McFadden, | ) | Case No. 8:13-cv-02278-JMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Cynthia York, Cecilia Reynolds, L. Miller, | ) | |
| JC Gaston, and Jane Doe,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants Cynthia York ("Defendant York"),

Cecilia Reynolds ("Defendant Reynolds") and Lula Miller's (identified as Ms. L. Miller, First

Name Unknown, Lieutenant of KRCI; hereinafter "Defendant Miller") motion for summary

judgment [Doc. 42]; Defendant Jannita C. Gaston's (identified as Mr. J.C. Gaston,

Grievance Hearing Officer) (hereinafter "Defendant Gaston") motion to dismiss [Doc. 64]

(Defendant Gaston, together with Defendants York, Reynolds and Miller, "Defendants");

and Plaintiff Bernard McFadden's ("Plaintiff") motions to continue [Doc. 78], and to compel

[Docs. 92, 93].  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule

73.02(B)(2)(d), D.S.C., the undersigned is authorized to review all pretrial matters in cases

regarding prison conditions and to submit findings and recommendations to the District

Court.

Plaintiff filed this action on August 22, 2013. [Doc. 1.] On February 10, 2014,

Defendants Miller, Reynolds and York filed a motion for summary judgment. [Doc. 42.] On

February 11, 2014, the Court issued a *Roseboro Order* advising Plaintiff of his duty to

---

[1] The Court recommended dismissal of Jane Doe, Clerk of Court, based on quasi-judicial immunity. [Doc. 10.] The District Court has yet to rule on this Report and Recommendation.

respond to the motion and setting a deadline of March 17, 2014. [Doc. 43.] On March 19, 2014, Defendant Gaston filed a motion to dismiss. [Doc. 64.] On March 20, 2014, the Court issued a *Rosoboro Order* advising Plaintiff of his duty to respond to the motion to dismiss and setting a deadline of April 24, 2014. [Doc. 65.] On March 20, 2014, the Court also entered an order extending Plaintiff's deadline for responding to the motion for summary judgment [Doc. 42] to April 24, 2014. [Doc. 67.] On April 10, 2014, Plaintiff filed a motion to continue Defendant Gaston's motion to dismiss. [Doc. 72.] On April 14, 2014, the Court denied Plaintiff's motion to continue [Doc. 72], but granted Plaintiff a 30 day extension of time, or until May 27, 2014, to respond the motion for summary judgment and the motion to dismiss. [Doc. 73.] On May 29, 2014, Plaintiff filed another motion to continue in light of his numerous discovery motions denied by the undersigned which he appealed. [Doc. 78.] Plaintiff, to date, has not responded to either the motion for summary judgment or the motion to dismiss but continues to file motions to compel responses to irrelevant and abusive discovery requests [Docs. 92 93], despite the Courts numerous warnings against the same.  The above motions are now ripe for review.

## **BACKGROUND**

Plaintiff filed his Complaint on August 22, 2013, alleging "conspiracy to deny privileges for litigation, heterosexual preference–1st and 14th Amend. Violations." [Doc. 1 at 2.]  Plaintiff claims the Defendants are violating his First Amendment right to protection from retaliation and Fourteenth Amendment Right to equal protection based on gender by denying him the privilege of working in the work release program and by keeping him in a hostile prison environment because of his heterosexual preference and because he decided to go to trial in his second degree burglary case where "a bisexual female

2

detective Irene Culick blood staged a crime scene." [*Id*.] As detailed below, Plaintiff alleges that the Defendants are bisexuals, that he has been fed mostly bologna sandwiches and that he has been excluded from participating in religious programs. [*Id*. at 2–3.]  He further claims that he is being kept in a dangerous part of the prison, where stabbings often occur. [*Id.* at 7.]

Plaintiff filed a separate case under 28 U.S.C. § 1983, captioned *McFadden v. Westley, et. al*, Case Number 12–CV-2392-JMC-PJG (D.S.C.) (the "*Westley* case"), Even prior to the filing of the *Westley* case, Plaintiff alleges he was placed in Magnolia B-side ("Magnolia") with a hostile roommate. [*Id*. at 3.] Magnolia houses inmates with disciplinary convictions, and therefore remained on lock down, with prisoners being fed bologna sandwiches, being excluded from participating in religious programs, and having a number of stabbings.  [*Id*.] Plaintiff alleges that he was retaliated against for filing the *Westley* case because before filing it, he was allowed to participate in the "Daniel Project" program for building character.  [*Id*. at 4.] Plaintiff claims that after he mailed the *Westley* case, on August 14, 2012, which was "leaked to Defendants by the Clerk of Court" before being filed, Defendants moved him to Oak-B side ("Oak") with an inmate known to be bisexual and unable to get along with others. [*Id*.] Plaintiff claims Oak houses inmates with disciplinary convictions, who are hostile and affiliated with gangs, are on lockdown often, and are fed bologna sandwiches, smaller portions of food and/or bag lunches, which caused him to lose 13 pounds.  [*Id*. at 5.] In addition, Plaintiff alleges he was placed on the waiting list for the "Daniel Project" program but that his name has been skipped over. [*Id*.]

Plaintiff alleged Defendants have ignored his requests to be transferred to a different custody level or a different facility. [*Id*.]

Plaintiff alleges he has been kept from being able to participate in the work release program in retaliation for his filing the *Westley* case and because of his heterosexual preference. [*Id*. at ¶ 11.] Plaintiff claims his equal protection rights have been violated by Defendants housing him in the most aggressive and hostile area of the prison and by failing to respond to his Step 2 grievances. [*Id*. at ¶ 15.] Plaintiff seeks monetary damages as well as declaratory and injunctive relief. [*Id*. at 8.]

## **APPLICABLE LAW**

### **Liberal Construction of Pro Se Complaint**

Plaintiffs brought this action pro se, which requires the Court to liberally construe their pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

4

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by

5

> governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and

6

would entitle her to relief. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, on a motion pursuant to Rule 12(b)(6), if matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)

("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

8

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at

252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at

248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to

the non-movant, he must produce existence of a factual dispute on every element essential

to his action that he bears the burden of adducing at a trial on the merits.

**Dismissal Under Rule 37**

Rule 37 of the Federal Rules of Civil Procedure defines the sanctions a court may

levy on a party who refuses to cooperate in discovery. Under Rule 37(a), "a party may

move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Under

Rule 37(b), a district court may impose sanctions, including dismissal of claims, for a

9

party's failure to comply with the court's discovery orders.  Fed. R. Civ. P. 37(b)(2)(A); *see also Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976) (per curiam) (stating that the question on appeal is whether the district court abused its discretion by dismissing the action pursuant to Rule 37, "not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action"); *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) ("[T]he express terms of Rule 37 permit a trial court to impose sanctions when 'a party fails to obey an order to provide or permit discovery.'" (quoting Fed. R. Civ. P. 37(b)(2))).  "While the imposition of sanctions under Rule 37(b) lies within the trial court's discretion, '[i]t is not . . . a discretion without bounds or limits.'"  *Hathcock*, 53 F.3d at 40 (quoting *Wilson v. Volkswagen of Am.*, 561 F.2d 494, 503 (4th Cir.1977)).  With the sanction of dismissal, "the 'range of discretion is more narrow' than when a court imposes less severe sanctions."  *Id.* (quoting *Wilson*, 561 F.2d at 503).  Dismissal of a party's case for failure to comply with a court order or a discovery request "is a severe sanction which must be exercised with restraint, caution and discretion."  *Zaczek v. Fauquier Cnty. Va.*, 764 F. Supp 1071, 1077 (E.D. Va. 1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

To warrant dismissal, the offending party's conduct in the litigation must demonstrate a "pattern of indifference and disrespect to the authority of the court."  *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 93 (4th Cir. 1992); *see Wilson*, 561 F.2d at 499–516.  A court must consider four factors to determine whether the offending party's conduct demonstrates such a pattern and disrespect for the court.  *See Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92.  Specifically, a court must consider:

10

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Id.* (citing *Wilson*, 561 F.2d at 503–06).

In addition, the Fourth Circuit has emphasized the significance of providing a party with a clear warning regarding the possibility of dismissal before entering such a sanction. *Hathcock*, 53 F.3d at 40. While a district court may dismiss a party's case for noncompliance with the court's discovery order where the party's action constitutes "'flagrant bad faith'" and "'callous disregard'" of his responsibilities, *Nat'l Hockey League*, 427 U.S. at 643, the Fourth Circuit has held the dismissal power should be exercised only when the record clearly reflects delay or contumacious conduct by the plaintiff, *Dove v. CODESCO*, 569 F.2d 807, 810 (4th Cir. 1978) (quoting *Durham v. Fla. E. Coast Ry. Co.*, 385 F.2d 366, 368 (5th Cir. 1967)).

**Dismissal Under Rule 41**

Under Rule 41 of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order," the court may enter an order of involuntary dismissal. Fed. R. Civ. P. 41(b); *see also Gantt v. Md. Div. of Corr.*, 894 F. Supp. 226, 229 (D. Md. 1995) (citing *Link v. Wabash R. Co.*, 370 U.S. 626 (1962); *White v. Raymark Indust., Inc.*, 783 F.2d 1175 (4th Cir. 1986); *Zaczek v. Fauquier Cnty., Va.*, 764 F. Supp. 1071, 1074 (E.D. Va.1991)) ("Federal courts possess an inherent authority to dismiss cases with prejudice *sua sponte*."). In assessing whether dismissal is appropriate under Rule 41(b), a court evaluates (1) the degree of the plaintiff's

personal responsibility for the failures; (2) the prejudice caused to the defendant; (3) whether the plaintiff has a history of deliberately proceeding in a dilatory fashion; and (4) the availability of a less drastic sanction.  *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982) (per curiam); *see also Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (holding the magistrate judge's prior explicit warning that a recommendation of dismissal would result if the plaintiff failed to obey the judge's order was proper grounds for the district court to dismiss the suit when the plaintiff did not comply despite the warning).

Although a pro se litigant is not held to the same high standards as an attorney, *see Hughes v. Rowe*, 449 U.S. 5, 10 n.7 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), pro se litigants must meet certain standards, including "respect for court orders without which effective judicial administration would be impossible."  *Ballard*, 882 F.2d at 96; *see also Dancy v. Univ. of N.C. at Charlotte*, 2009 WL 2424039, at *2 (W.D.N.C. Aug. 3, 2009) ("Although *pro se* litigants are given liberal treatment by courts, even *pro se* litigants are expected to comply with time requirements and other procedural rules 'without which effective judicial administration would be impossible.'" (quoting *Ballard*, 882 F.2d at 96)); *Pack v. S.C. Wildlife & Marine Res. Dep't*, 92 F.R.D. 22, 25 (D.S.C. 1981) ("A pro se litigant . . . must meet certain standards.  Among these are a good faith attempt to comply with the rules of discovery and to be present for trial." (internal citations omitted)).  Accordingly, pro se litigants are also subject to the provisions of Rule 41.

**DISCUSSION**

Defendants York, Reynolds and Miller move for summary judgment with respect Plaintiff's equal protection claim because they argue that there is no evidence that Plaintiff has been treated differently than any other inmate. [Doc. 42 at 5–6.] These Defendants further contend there has been no retaliation against Plaintiff and, thus, no First Amendment violation because Plaintiff cannot demonstrate that these Defendants retaliated against him, nor can he show that they engaged in any conduct which would adversely affect his right to petition the Court. [*Id.* at 7–8.] Defendant Gaston moved for dismissal under Rule 12(b)(6) claiming that "[t]here are very few allegations against Defendant Gaston in the Complaint" and because Plaintiff has no constitutional right to a grievance procedure, Defendant Gaston's alleged failure to respond to a Step 2 grievance is not a proper claim under 42 U.S.C. § 1983. [Doc. 64 at 2, 4.] The Court finds that Defendants York, Reynolds and Miller are entitled to summary judgment and Defendant Gaston is entitled to dismissal.

As an initial matter, upon review of Plaintiff's Complaint, the Court finds Plaintiff fails to present an equal protection argument because he has put forth no evidence that he was treated differently from any other inmate. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) ("[t]o proceed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."). The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person equal protection of the laws. U.S. Const. amend. XIV, § 1. In the Fourth Circuit, a prisoner must demonstrate two elements to establish an equal protection claim:

13

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison*, 239 F.3d at 654. The requisite level of scrutiny is the rational basis test rather than strict scrutiny, even if the disparate treatment implicates the prisoner's fundamental rights. *Id.* at 654–55 (quoting *Turner*, 482 U.S. at 89). Therefore, to be valid, the disparate treatment must be reasonable in light of the security and management concerns of the prison system. *Id.* at 655.

Here, there is no evidence in the record, other than Plaintiff's conclusory allegations, that similarly situated inmates were treated differently from Plaintiff. To survive a motion for summary judgment, the non-moving party may not rest on the allegations averred in his pleadings but must demonstrate specific, material facts exist that give rise to a genuine issue. *Celotex*, 477 U.S. at 324; *see also House v. New Castle Cnty.*, 824 F. Supp. 477, 485 (D. Del. 1993) (holding that a plaintiff's conclusory allegations are insufficient to maintain a claim, especially when the plaintiff fails to counter contradictory evidence in the record). Plaintiff's main allegation that Defendants have discriminated against him is that he has been forced to share a cell with an inmate who Plaintiff claims is homosexual, but Plaintiff has no evidence to support this fact, and even if true, would not support a claim for equal protection. Being placed with a certain cell mate does not show that Plaintiff was treated differently. Moreover, there is no constitutional right for a prisoner to be housed in a particular institution, at a certain custody level, or in a certain unit. *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("[i]t is well settled that the decision where to house inmates is at the

14

core of prison administrators' expertise."). Plaintiff has also put forth no evidence that he is not being allowed to participate in the work release program because of an equal protection violation. As Defendants have pointed out, the same policy relating to work release is being applied to Plaintiff has is being applied to all others with dates of conviction that precede June 2, 2010. [*See* Doc. 42-8.] Plaintiff has provided the Court with no evidence to demonstrate that he is being treated differently from similarly situated inmates. Consequently, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact to survive Defendants' motion for summary judgment and recommends Defendants' motion be granted as to Plaintiff's equal protection claim.

Plaintiff also fails to make a retaliation claim. To set forth a retaliation claim under § 1983, a plaintiff must establish that the plaintiff engaged in protected activity and the government's actions chilled that protected activity. *See The Baltimore Sun Co. V. Erlich*, 437 F.3d 410, 416 (4th Cir. 2006). Here, Plaintiff has failed to show any retaliatory action or any nexus between his filing of the *Whitley* case and the alleged retaliation. Plaintiff claims that the Clerk of Court leaked his lawsuit to prison officials and thus his cell assignment was changed, but there is no evidence to support that bald accusation. Additionally, Plaintiff was reassigned housing units five days before the lawsuit was served. [Doc. 42 at 7.] Plaintiff also complains about his housing conditions *before* the *Whitley* case was even filed. Consequently, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact to survive Defendants' motion for summary judgment and recommends Defendants' motion be granted as to Plaintiff's retaliation claim.

Finally, to the extent Plaintiff asserts a claim against Defendant Gaston, Plaintiff has failed to state a claim. The accusations against Gaston in the Complaint are minimal at

15

best.   Plaintiff's claims as to Gaston appear to be directed solely to his claim that Defendant's failure to respond to his Step 2 grievance prevented him from participating in the work release program.  [*See* Doc. 1 at ¶¶ 14–15 (re:John/Jane Doe).]  To the extent Plaintiff alleges that Gaston failed to properly respond to his grievances, such claim does not rise to the level of a constitutional violation.  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).   Plaintiff also fails to allege with any specificity a claim that Gaston acted in conspiracy with other Defendants to prevent Plaintiff from participating in a work release program.   To allege a civil conspiracy under § 1983, a plaintiff is required to demonstrate that defendants acted jointly and some overt act was done in furtherance of the conspiracy, which denied the plaintiff his or her constitutional right.  *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996).  Plaintiff has not proven, much less alleged, any overt act that Gaston committed in furtherance of an illegal activity or in furtherance of a violation of Plaintiff's constitutional rights.   Moreover, Plaintiff has not even alleged a valid constitutional violation.  As the Fourth Circuit has counseled, plaintiffs have a "weighty burden to establish a civil rights conspiracy," which Plaintiff has failed to meet.  *See id.*  Therefore, dismissal of the claims against Defendant Gaston is appropriate.

**Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the

16

alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992).

Determining whether an official is entitled to qualified immunity generally requires a two-step inquiry. *See generally Pearson v. Callahan*, 555 U.S. 223 (2009). Courts considering whether to dismiss a complaint based on qualified immunity should consider both "whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right" and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id*. at 232 (citations omitted). The court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 236. Qualified immunity can be established, and is in fact, specifically encouraged, at the summary judgment stage when there is no genuine issue of material fact, and when the undisputed facts establish that the defendant is entitled to judgment as a matter of law. *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir.1992).

As discussed above, the Plaintiff fails to show that the Defendants violated any of his clearly established constitutional or statutory rights. Accordingly, the Court finds that the Defendants are entitled to qualified immunity, and summary judgment/dismissal is appropriate.

**Dismissal is Appropriate, in the Alternative, for Discovery Abuses**

The standards for dismissal under Rule 37(b)(2) and Rule 41(b) are "virtually the same." *Carter v. Univ. of W. Va. Sys.*, 23 F.3d 400, 1994 WL 192031, at *2 (4th Cir. 1994) (per curiam) (unpublished table decision). Accordingly, to determine whether this action should be dismissed for Plaintiff's failure to comply with discovery limitations and the Court's orders, the Court must consider (1) whether Plaintiff acted in bad faith; (2) the amount of prejudice Plaintiff's noncompliance caused Defendants; (3) the need for deterrence of the sort of noncompliance exhibited by Plaintiff; (4) the effectiveness of less drastic sanctions; and (5) whether Plaintiff has a history of deliberately proceeding in a dilatory fashion. *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92; *Chandler Leasing Corp.*, 669 F.2d at 920.

### *Plaintiff's Discovery Abuses*

Plaintiff filed his first motion to compel on January 21, 2014. [Doc. 28.] Among other requests, Plaintiff desired information about Defendant Reynolds' marital status and her body-building competitions because he claimed that such competitions gave her character traits of a man and "therefore, evidence a jury could consider in determining whether Reynolds is bias[ed] toward heterosexual males." [*Id.* at 2.] Plaintiff also requested information on whether the Defendants owned dogs and accused them of using these dogs to perform oral sex. [*Id.*] Finally, Plaintiff claimed Defendants had "inclination to be involved in inappropriate sexual activities." [*Id.* at 3.] The Court denied Plaintiff's motion on February 18, 2014. [Doc. 46.]

18

That same day, Defendants filed a motion for protective order. [Doc. 48.] In the motion, Defendants specified the numerous discovery responses from Plaintiff that Defendants deemed inappropriate, and requested that the Court issue an order finding that Defendants' "marital status, childbirth history, sexual preference, and knowledge about matters such as razor bumps or X-rated films" was not relevant to the litigation. [*Id.* at 3.] The Court granted Defendants' motion on February 21, 2014. [Doc. 49.] In the Order, Plaintiff was "prohibited from serving any discovery requests on Defendants York, Reynolds or Miller regarding their marital status; parenthood; pornography; sexual relations between SCDC employees or inmates; sexual, racial or gender-based stereotypes; or other matters not central to the issues raised in the Complaint." [*Id.* at 7.]

On March 7, 2014, Plaintiff filed a second motion to compel. [Doc. 53.] In that motion, Plaintiff requested that Defendants admit that "dogs will lick a woman's menstruation period if she lets it," admit that Defendants used dogs for oral sex, and "admit that a masculine or muscular body is a common trait among lesbians." [*Id.* at 2–3.] The Court denied Plaintiff's second motion to compel, finding that the discovery requests were covered under the Protective Order. [Doc. 56.] Plaintiff was specifically warned that "if he continues making prohibited and harassing discovery requests, his case may be dismissed." [*Id.*] Plaintiff filed a third motion to compel [Doc. 60], which the Court denied under the Protective Order as inappropriate and harassing requests. [Doc. 61.][2] On May 22, 2014, Plaintiff filed a fourth motion to compel, which included requests as to Defendant York's marital status, child-birthing status, and hair styles. [Doc. 76.] In denying the fourth

---

[2] Plaintiff appealed the denial of his three motions to compel and the entry of the protective order to the District Court. [Docs. 58, 59, 69, 70.]

motion, the Court found that "Defendants have fully complied with their obligations under the Federal Rules of Civil Procedure" and "many of Plaintiff's requests are not relevant and border on inappropriate, which has been an issue throughout this case," with a cite to the Court's Protective Order. [Doc. 82.] Plaintiff filed a fifth motion to compel on June 20, 2014 [Doc. 86], which the Court denied [Doc. 89. The Court found Plaintiff's requests to be irrelevant to his causes of action and "warned [Plaintiff] for a final time that continued motions for irrelevant discovery will result in this Court recommending dismissal of his case." [*Id.*]

On June 30, 2014, and July 2, 2014, Plaintiff filed his sixth and seventh motions to compel. [Docs. 92 and 93.] In the sixth motion, Plaintiff again requests admissions that Defendant Reynolds does not have children, is not married, and "won body building contests in having muscular character traits of a man." [Doc. 92 at 2.] Plaintiff desires information on Defendant Miller's hometown to prove that "lesbian Defendant Miller – as well as Defendant York – is from Sumter and is in an agreement with another alleged lesbian police detective. . . ." [*Id*. at 5.] He claims that Reynolds muscular build should be considered by the jury as evidence that she is attracted to another inmate whom she refuses to discipline. [*Id*. at 8.] In the seventh motion, Plaintiff seeks to compel documents the Defendants have averred to him they do not have. [Doc. 93.]

### *Whether Plaintiff Acted in Bad Faith*

The record in this matter reflects Plaintiff has acted in bad faith.  First, Plaintiff has failed to comply with more than one order of the Court.  *Berry v. S.C. Dep't of Soc. Servs.*, 1997 WL 499950, at *6 (4th Cir. Aug. 25, 1997) (finding that a party's failure to follow a

20

court's order to comply with discovery was a factor in dismissing the party's case). In fact, Plaintiff has refused to comply with Court Orders at least five times–each time he filed a motion to compel in violation of this Court's Protective Order and each time he filed a motion for irrelevant discovery or for discovery that Defendants stated they did not possess after the Court warned Plaintiff that such repeated requests would not be tolerated.

Plaintiff has shown a pattern of indifference and disrespect for Orders of the Court and the Federal Rules of Civil Procedure by blatantly ignoring the Court's directives, time and time again. The Court has given Plaintiff ample opportunity to comply and has provided clear notice on at least two occasions that the Court would not only entertain a motion for sanctions but would also grant dismissal if Plaintiff did not comply with the Court's orders directing compliance. Instead of complying with the Court's Orders, Plaintiff has chosen to continue with his conduct and file inappropriate, repeated motions. To that end, not only is Plaintiff ignoring Court Orders, but he is filing motions requesting inappropriate information of the most personal nature from Defendants, which is disrespectful and injurious to Defendants and also disrespectful of the Court.

### *Amount of Prejudice Caused to Defendants*

While it is true that "the district court's desire to enforce its discovery orders is confronted head-on by the [noncomplying] party's rights to a trial by jury and a fair day in court," *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92 (citing *Wilson*, 561 F.2d at 503–04), the Court finds Plaintiff's continued requests and inquiries on the public record about Defendants' sexual orientation, sexual practices and physical appearance are prejudicial to Defendants, particularly as they hold leadership roles at the prison. Moreover, Plaintiff's allegations of bestiality and orgies are offensive to Defendants and to the Court. Finally,

21

because Plaintiff refuses to cease filing these motions, Defendants' time is wasted responding to his discovery requests and making objections to the Court, taking away from Defendants' time to defend the case. Defendants' prejudice is particularly pronounced in this case where no Court Order seems sufficient to halt Plaintiff's malicious inquiries. Defendants should not be disparaged and required to repeatedly respond to Plaintiff's continued motions. While typically under this prong courts examine the materiality of evidence not produced, here the Court has considered the immateriality of the discovery that Plaintiff continues to request and finds that it is prejudicial to Defendants.

### *Need for Deterrence*

The need for deterrence of conduct like Plaintiff's is significant. As stated by the Fourth Circuit, "[i]n such cases, not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct." *Id.* at 92 (citing *Nat'l Hockey League*, 427 U.S. at 643; *Wilson*, 561 F.2d at 504). While typically courts deal with such conduct by party's failure to respond to discovery, here, Plaintiff's continued requests demonstrate a total disrespect for the Court. Plaintiff has demonstrated an unwillingness to conform to the Federal Rules and to abide by the orders of the Court. Without exercising the power to dismiss under such circumstances, judicial resources are wasted, judicial authority becomes worthless, and litigants are forced endure expending resources to respond to frivolous and malicious requests. Therefore, there is a need for deterring conduct like Plaintiff's by exercising the Court's discretion to dismiss Plaintiff's action.

### *Availability of Lesser Sanctions*

Lesser sanctions are available, *see* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii), but would likely be ineffective.  Moreover, the Fourth Circuit has recognized lesser sanctions can include any court orders that clearly warn of punishment for noncompliance.  *See Anderson v. Foundation for Adv., Educ. & Emp't of Amer. Indians*, 155 F.3d 500, 505 (4th Cir. 1998).  The Fourth Circuit has also held that a district court does not abuse its discretion by dismissing an action after issuing an explicit and reasonable warning. *Ballard*, 882 F.2d at 95–96.

Here, Defendants' motion for protective order, the Court's Protective Order and the Court's multiple orders warning Plaintiff of the likelihood of dismissal have not motivated Plaintiff to comply with the Court's directives and cease requesting certain prohibited information.  Because Plaintiff's bad faith failure to cooperate in discovery has been prejudicial to Defendants and has been in the face of Court warnings of severe sanctions, dismissal is the appropriate recourse.  The previous warnings of the Court have afforded Plaintiff ample opportunity to correct his behavior and preserve his right to bring suit. Accordingly, any sanction other than dismissal would fail to cure Plaintiff's determined obdurateness and impede the administration of justice.  Plaintiff's conduct constitutes a clear abuse of the judicial process, which Rules 37 and 41 are specifically intended to prevent.

### *Whether Plaintiff Has a History of Proceeding in Dilatory Fashion*

The conduct displayed by Plaintiff, as described above, establishes Plaintiff has a history of proceeding in a dilatory fashion.  *See Huertas v. City of Philadelphia*, No. 05-

1642, 2005 WL 1669754, at *2 (3d Cir. July 19, 2005) (finding that the plaintiff's continued refusal to attend his deposition established a pattern of dilatory conduct).  Plaintiff's repeated motions have caused significant delay in this proceeding and he seems determined to slow the Court process in whatever way that he can, including appealing all of this Court's discovery orders to the District Court and continuing to file motions for irrelevant and offensive discovery.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' York, Reynolds and Miller [Doc. 42] Motion for Summary Judgment be GRANTED; Defendant Gaston's  [Doc. 64] Motion to Dismiss be GRANTED; and Plaintiff's motions to continue [Doc. 78], and to compel [Docs. 92, 93] be DENIED as MOOT.

In the alternative, in light of Plaintiff's continuous and flagrant disregard of discovery limitations and the authority of this Court as set forth above, pursuant to Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure, the Court recommends this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 8, 2014
Greenville, South Carolina

24